UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES HARRIS,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>HEIDI LACKNER, Warden,<br><br>　　　　　Respondent. | No. 16-cv-0252 TLN AC<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on the petition filed on February 6, 2016, see ECF No. 1 at 16,[1] which challenges petitioner's 2012 conviction for the sexual abuse of his stepdaughters.  Respondent has answered.  ECF No. 12.  Petitioner did not file a traverse, and the time for doing so has passed.

## BACKGROUND

I.　Proceedings In the Trial Court

　A.　The Charges

Petitioner was charged in Count One of the Amended Information with lewd acts upon a child under the age of 14 in violation of Cal. Pen. Code, § 288(A), with enhancements for

---

[1] See Houston v. Lack, 487 U.S. 266 (1988) (establishing rule that a prisoner's court document is deemed filed on the date the prisoner delivered the document to prison officials for mailing).

1

1  multiple victims; in Count Two with the continuous sexual abuse of a child under the age of 14 in
2  violation of Cal. Penal Code § 288.5, with enhancements for substantial sexual contact and
3  multiple victims; in Counts Three and Four with lewd acts upon a child in violation of Cal. Pen.
4  Code § 288(C)(1); in Counts Five and Six with lewd acts upon a child in violation of Cal. Pen.
5  Code § 288(C); in Count Seven with attempted unlawful sexual intercourse in violation of Cal.
6  Pen. Code §§ 664 & 261.5(D); in Counts Eight through Ten with lewd acts upon a child under the
7  age of 14 in violation of Cal. Pen. Code § 288(A), with enhancements for multiple victims; and in
8  Count Eleven with lewd acts upon a child in violation of Cal. Pen. Code § 288(C)(1).  1 CT 216-
9  226 (Amended Information).[2]  Counts One through Seven were based on allegations of sexual
10 contact with "Stacy Doe," and Counts Eighth through Eleven were based on allegations of sexual
11 contact with "Elizabeth Doe."  Id.

12     As detailed below, only two of the counts involving Stacy (Counts One and Three) were
13 ultimately submitted to the jury, along with all counts involving Elizabeth.  See 2 CT 358, 362.

14     B.  Proceedings Related to the Status of Stacy Doe

15     During litigation of pretrial and in limine motions, it became clear that Stacy Doe was not
16 cooperating with the prosecution.  She had not been successfully served with a subpoena, and the
17 prosecution did not initially know her whereabouts.[3]  Uncertainty about whether Stacy would
18 testify was a significant factor in petitioner's unsuccessful motion to sever the Stacy counts from
19 the Elizabeth counts, in litigation of the admissibility of various items of evidence, and regarding

---

[2] "CT" refers to the Clerk's Transcript on Appeal, vols. 1-3 (Lodged Docs. 1-3).

[3] Three days before her 18th birthday, while the charges against petitioner were pending, Stacy left her mother's home for what her mother, Tamara, thought was a school trip to Europe. Stacy never returned. Tamara received a message via Facebook from petitioner's 48-year old brother, Greg, telling her that he and Stacy were in an intimate relationship and would be "in seclusion" for the foreseeable future. I RT 123-128. Stacy had no further contact with Tamara. As trial approached, the prosecutor came to believe that Stacy was actively evading service of a witness subpoena, and that her and Greg's whereabouts were being concealed from the prosecution by petitioner's sister, who had been harboring them. Id. at 155. It appears that defense counsel was in contact with Stacy during this time. Id. at 155-156. The trial court granted a defense motion to exclude any reference at trial to Stacy and Greg's relationship. Id. at 125. After the prosecutor had exhausted efforts to serve subpoenas, the judge authorized material witness orders and arrest warrants for both Stacy and Greg. Id. at 170, 177. See also 1 CT 264-266 (Declaration in Support of Order for Attendance of Material Witness at Trial).

the use of evidence involving one victim as propensity evidence as to counts involving the other.[4] See, e.g. I RT 58-60 (argument regarding severance), 64-65 (discussion of propensity evidence issue); see also id. at 68 (trial judge commenting, ". . . it's kind of hard to rule about this stuff without knowing if Stacy's going to be here.").[5]

The central legal issue presented by Stacy's absence, which was discussed extensively prior to jury selection but not decided until the jury instructions were finalized mid-trial, involved the admissibility of petitioner's statements regarding Stacy in light of the corpus delicti rule (requiring evidence independent of a confession in order for the confession to be considered as substantive evidence). The procedural history of this issue is set forth below regarding petitioner's Claim One, which alleges ineffective assistance of appellate counsel in failing to pursue the issue on appeal.

Although the trial court ultimately issued a material witness order and arrest warrant to secure Stacy's appearance, she was not located and did not testify. The prosecution moved midtrial to dismiss Count Two and Counts Four through Six, and to amend Counts One and Three to conform to the evidence. III RT 736-743. The motions were granted, and the court also dismissed Count Seven. III RT 744. Accordingly, the charges ultimately submitted to the jury were two counts involving lewd acts upon Stacy (Counts One and Three) and four counts alleging lewd acts upon Elizabeth (Counts Eight through Eleven). 2 CT 358.

### C. The Evidence Presented at Trial

#### 1. Prosecution Case

Tamara Harris began dating petitioner in early 2000 and married him in 2004. She had three young daughters from prior relationships, K.D. (Krystal), S.H. (Stacy), and E.R. (Elizabeth). Petitioner assumed the role of father figure to the girls, who called him "dad." Tamara and petitioner then had two children together, N.H. in 2006 and D.H. in 2008. The family lived together in Stockton. Petitioner was the authority figure in the family. Tamara described him as

---

[4] California permits the use of propensity evidence in sexual abuse cases. Cal. Evid. Code § 1108; see Schultz v. Tilton, 659 F.3d 941 (9th Cir. 2011); Mejia v. Garcia, 534 F.3d 1036 (9th Cir. 2008).

[5] "RT" refers to the Reporters' Transcript on Appeal, vols. I-IV (Lodged Docs. 4-7).

3

1   ruling over everyone and everything in the household.  Elizabeth and Krystal described him as
2   strict and controlling, imposing conservative standards for conduct and dress, as well as
3   instructing them on sexual activity.

4         Elizabeth testified that petitioner touched her inappropriately for the first time when she
5   was in third grade.[6]  On that occasion she awoke from sleep to discover that petitioner had pulled
6   down her pants.  The next incident happened when she was 12.  She was awake in bed, and
7   petitioner pulled up her shirt and touched her belly button, then moved on top of her and began
8   "humping" her while wearing only his boxers.  Petitioner's penis touched the outside of her
9   vagina through her underwear.  The incident lasted about 10 minutes.

10        Other sexual activity followed.  Petitioner would grab Elizabeth's breasts, rub them in a
11  circular motion, and kiss them.  When he was "humping" her in his boxer shorts, Elizabeth could
12  feel his erect penis.  The "humping" concluded when petitioner ejaculated in his boxers or into a
13  towel.  On several occasions he rubbed Elizabeth's genital area on the outside of her underwear.
14  On one occasion, he reached under her underwear and Elizabeth pulled back.  Petitioner never
15  had her touch his penis, but did have Elizabeth squeeze and pull on his nipples to enhance his
16  sexual satisfaction.  For a while the touching happened almost every night.  Petitioner frequently
17  touched her vagina (through her underwear) and breasts, and "humped" her, when she was 12
18  years old.  All three behaviors continued, though less frequently, when she was 13 and 14.

19        Elizabeth did not disclose the molestation at the time because petitioner warned her that
20  disclosure would tear the family apart.  Petitioner told her that "nobody understands how a father
21  should love a daughter."  He also told her that sexual intercourse was something that happens
22  "when a woman loves a man, or when a father loves a daughter."

23        Tamara testified that petitioner started sleeping in the same bed with then 12-year-old
24  Stacy while she was pregnant with N.H.  Petitioner eventually spent more nights in Stacy's
25  bedroom, or with Stacy in the master bedroom where the door was normally closed and often
26  locked.  Tamara did not think this was right, but when she expressed her concerns to petitioner,
27
28  [6] Elizabeth was 16 years old at the time of the trial.

1   he replied that Stacy was having nightmares and he was comforting her as part of a normal
2   father/daughter relationship.  He eventually wrote a letter to Tamara urging her to encourage
3   Stacy to sleep with him, insisting that there was nothing wrong with this, and remarking that it
4   had been going on for four years.  Petitioner sometimes acted as if he preferred Stacy to his wife.
5   Tamara and petitioner only had sex twice after D.H. was born.  Because petitioner attributed their
6   lack of a sex life to fear of another pregnancy, she bought a box of condoms for him.  Although
7   petitioner never used them with her, Tamara later found the box had been opened and several
8   condoms were missing.

9   Krystal testified that petitioner began talking to her explicitly about sex, in ways that made
10  her uncomfortable, when she was 11 or 12.  Petitioner would frequently talk to her about the
11  importance of nipple and clitoral stimulation for women; he persisted even when she told him that
12  these conversations made her uncomfortable.  Petitioner sometimes tried to cuddle with Krystal in
13  her bed, but she told him to get out of her room.

14  Krystal testified that petitioner frequently slept in the same bed with Stacy or Elizabeth.
15  She often saw Stacy in bed with petitioner in the master bedroom after Stacy had spent the night
16  there, or saw petitioner in Stacy's bed in the morning.  Sometimes they were under the covers,
17  and sometimes over the covers.  Petitioner would be wearing only boxer shorts.  Sometimes he
18  had his arm around Stacy; that was the only touching that she observed while they were in bed
19  together.  In general, though, petitioner was "definitely more affectionate" with Stacy than with
20  Elizabeth and Krystal.  He frequently hugged Stacy and had her sit on his lap when she was 14 or
21  15, which made Krystal uncomfortable.  The last year the family lived in Stockton, petitioner
22  slept with Stacy every night.

23  Petitioner wrote a letter to Krystal shortly after she turned 18, expressing his sexual desire
24  for her and his belief that she had been coming on to him.  The letter, which was left on Krystal's
25  bed, described petitioner's belief that Krystal had sexual tension which needed addressing, and
26  his offer to come into her room and have sex with her after everyone was asleep.  Krystal was
27  shocked and disgusted when she read the letter.  Even though it was late, she took the family's
28  van and drove from Stockton to Lodi, where she sat in a parking lot and screamed and cried.  She

then drove to a friend's house in Stockton, told the friend what was going on, and called her mother. Tamara drove to the friend's house and Krystal showed her the letter. Tamara called the police. The responding officers talked to petitioner, who said Krystal dressed provocatively and acted romantically towards him, and that he was sexually attracted to her. He admitted these feelings were wrong and that he needed help, so officers took him to a mental health clinic.

Shortly thereafter, petitioner went to live with his father. When petitioner's mother asked Tamara if petitioner could have overnight visits with N.H. and D.H., Tamara asked Stacy if there was any reason not to let the younger children stay with petitioner. Stacy, who had previously told her mother that petitioner had not molested her, disclosed that petitioner touched her and had her touch him. Tamara called the police. The following day, she informed Elizabeth about Stacy's disclosure; Elizabeth then told Tamara that petitioner had molested her too.

In an interview with police, petitioner admitted molesting Elizabeth and Stacy.[7] He rubbed his erect penis against Elizabeth's clitoris while they were both clothed. Petitioner also reached under Elizabeth's panties to rub her vagina, but she "didn't want that" so he stopped. He admitted caressing Stacy. His sexual contact with Stacy progressed; he had intercourse with her three months before the interview. Petitioner slept in the same bed with Stacy four to six nights a week and would perform any sex act on her he thought she would like. Petitioner dictated apology letters to Elizabeth, Stacy, Krystal, and Tamara during the interview.

Dr. Anthony Urquiza gave expert testimony on the Child Sexual Abuse Accommodation Syndrome (CSAAS). He explained five characteristics which, according to the CSAAS theory, often occur in children who have been sexually abused: (1) secrecy; (2) the victim's feeling of helplessness; (3) the victim's feeling of entrapment and attempts to cope by accommodation; (4) delayed or unconvincing disclosure of the abuse; and (5) retraction.

////

////

---

[7] Defendant's statement was internally contradictory and at times somewhat ambiguous. See 2 CT at 527-578 (transcript of interview). Nonetheless, the statement fairly supports the prosecution's construction of it, and the jury's verdict. Petitioner does not contend otherwise.

2. Defense Case

The defense presented evidence that Elizabeth had once falsely accused a neighbor of molesting her. Elizabeth later told the neighbor's wife she made up the accusation.

A female friend of petitioner's sister, who had known petitioner since childhood, testified that she did not believe he was capable of committing the charged offenses.

Petitioner's mother testified that Tamara once told her she saw petitioner molest Stacy but did not report it because petitioner wouldn't let her. Petitioner's mother thought Tamara was lying.

D. Outcome

The jury returned guilty verdicts on all counts, and found all enhancements to have been proved. Petitioner was ultimately sentenced to a total term of 63 years and 8 months to life.

II.     State Post-Conviction Proceedings

Petitioner timely appealed, raising the following claims: (1) the trial court erred by instructing the jury that both charged and uncharged conduct could be considered as propensity evidence; (2) the trial court did not understand its discretion at sentencing to impose concurrent or consecutive terms; and (3) trial counsel was ineffective in failing to object to consecutive terms. Lodged Doc. 9 (Appellant's Opening Brief). The California Court of Appeal affirmed the judgment of conviction on February 24, 2014. Lodged Doc. 12.[8] The California Supreme Court denied review on April 30, 2014. Lodged Doc. 14.

Petitioner filed a petition for writ of habeas corpus in the Superior Court of San Joaquin County on July 16, 2015, raising the same three claims that are now before this court. Lodged Doc. 15. The petition was denied in a written decision on October 6, 2015. Lodged Doc. 16. Petitioner next filed his habeas claims in the California Court of Appeal, which denied the petition without comment or citation on November 30, 2015. Lodged Docs. 17, 18. Petitioner then filed a habeas petition in the California Supreme Court, which was summarily denied on February 3, 2016. Lodged Docs. 19, 22.

---

[8] The Court of Appeal remanded for the limited purpose of superior court consideration whether to impose a consecutive or concurrent term on Count 8.

7

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 131 S. Ct. 770, 785 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. at 784-785 (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

8

the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 1399. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 131 S. Ct. at 786.

## DISCUSSION

I. Claim One: Ineffective Assistance of Appellate Counsel in Failing to Present Corpus Delicti Issue

A. Petitioner's Allegations and Pertinent State Court Record

Petitioner contends that his appellate lawyer violated his Sixth Amendment right to the effective assistance of counsel by failing to argue that the trial court erred in its application of the corpus delicti rule.[9] ECF No. 1 at 5. The petition states the following supporting facts:

////

---

[9] Under California law, "the prosecution must prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause," and cannot do so by relying exclusively on the statements of the defendant. People v. Alvarez, 27 Cal. 4th 1161, 1168–1169 (2002). Proof of the corpus delicti may be made by circumstantial evidence, id. at 1171, and requires only a prima facie showing that supports a reasonable inference a crime was committed, People v. Jones, 17 Cal.4th 279, 301 (1998). Once the corpus delicti has been established, the defendant's statements may be considered for their full value. Alvarez, 27 Cal. 4th at 1171.

9

> There was no evidence at trial with respect to the lewd/lascivious conduct allegations against Stacy Doe. Three people, Krystal Doe and Elizabeth Doe (Stacy's sisters) and Tamara Doe (Stacy's mother) testified that Petitioner sometimes "cuddled" with Stacy, lie in the same bed as Stacy, or have Stacy sit on his lap at times. But Petitioner was Stacy's step-father. There was no testimony from Stacy at trial. The witnesses observed no illegal conduct. As such, there was no evidence of the alleged crime. Appellate counsel should have argued this on appeal, but she did not.

Id.

As previously noted, application of the corpus delicti rule to the counts involving Stacy was an issue addressed repeatedly before and during the trial. See I RT 37-44; II RT 380-382; III RT 714-730. The question was whether there was sufficient evidence that petitioner had touched Stacy with sexual intent, absent her testimony, to support the jury's consideration of his statement to police, which admitted sexual contact. Following presentation of the prosecution case and amendment of the charges, the trial judge ruled as to Counts One and Three, the remaining Stacy counts, that there was sufficient circumstantial evidence of sexual touching to permit jury consideration of defendant's statement. III RT 736-744. The judge called it a "close call," but concluded that the sufficiency of the circumstantial evidence was a question for the jury. 744.

The jury was instructed pursuant to California law about the prosecution's burden of proof; the intent elements of the charged offenses; the consideration of circumstantial evidence; the consideration of propensity evidence; evaluation of witness credibility; and evaluation of a defendant's out-of-court statements. In relation to the corpus delicti rule, the jury was specifically instructed as follows:

> The Defendant may not be convicted of any crime based totally on his out-of-court statement. You may rely on the Defendant's out-of-court statements to convict him if you conclude . . . that other evidence shows the crimes charged were committed. No person may be convicted of a criminal offense unless there is some proof of each element of the crime independent of any confession made by him outside of the trial. The other evidence may be slight, and need only be enough to support a reasonable inference that the crime was committed. The identity of the person who committed the crime may be proved by the Defendant's statement alone. You may not convict the Defendant unless the People have proved his guilty beyond a reasonable doubt.

IV RT 1000.

B. <u>The Clearly Established Federal Law</u>

A criminal defendant enjoys the right to effective assistance of counsel on appeal. <u>Evitts v. Lucey</u>, 469 U.S. 387, 391(1985). Claims that this right has been violated are evaluated under the framework of <u>Strickland v. Washington</u>, 446 U.S. 668 (1984). <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000). Under <u>Strickland</u>, the Sixth Amendment is violated when (1) counsel's representation falls below an objective standard of reasonableness, and (2) the defendant is prejudiced by the unreasonable performance. <u>Strickland</u>, 446 U.S. at 692, 694. To demonstrate prejudice in the appellate context, petitioner must show a reasonable probability that he would have prevailed on appeal absent counsel's alleged errors. <u>Smith</u>, 528 U.S. at 285-286.

C. <u>The State Court's Ruling</u>

This claim was raised in petitioner's state habeas petition, which was denied in a reasoned decision by the superior court and thereafter denied summarily by the California Court of Appeal and California Supreme Court. This court must "look through" the silent denial of the state's highest court to the "last reasoned decision" below. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797 (1991). Accordingly, the opinion reviewed for reasonableness under 28 U.S.C. § 2254(d) is that of the San Joaquin County Superior Court. See <u>Bonner v. Carey</u>, 425 F.3d 1145, 1148 n.13 (9th Cir. 2005).

The superior court ruled as follows:

> *Appellate counsel failed to argue that there was a lack of corpus delicti with respect to the charges related to Stacy Doe.*
>
> "Proof of the *corpus delicti* of a crime may be made by circumstantial evidence and need not amount to proof beyond a reasonable doubt. Rather, the amount of independent proof required is 'quite small,' 'slight,' or 'minimal,' amounting only to a prima facie showing permitting a reasonable inference a crime was committed. (Citation omitted.) Once the *corpus delicti* has been established, the petitioner's statements may be considered for their full value." <u>People v. Tompkins</u>, (2010) 185 C.A. 4th 1253, 1259.
>
> The record indicates there was independent evidence submitted of criminal behavior related to Stacy Doe. Krystal testified that, at times, Petitioner came into her bedroom trying to cuddle with her; she testified that she received a letter from petitioner offering to have sex with her and suggesting she meet him in her bed for the purpose; Krystal observed Petitioner with his arm around Stacy while lying in her bed; Krystal testified that Stacy would sit on Petitioner's lap to

11

> watch television when Stacy was 14 or 15 years old; Elizabeth testified that Petitioner would sometimes sleep with Stacy; and Petitioner's wife testified that she kept a new box of condoms in her bedside table and discovered that several condoms were missing despite the fact that she never used them with Petitioner. This evidence is sufficient and allows consideration of Petitioner's statements and admissions. Accordingly, appellate counsel's decision not to argue a lack of *corpus delicti* can reasonably be considered sound strategy.

Lodged Doc. 16 at 2.

### D. Objective Reasonableness Under § 2254(d)

The state court's ruling involved no unreasonable findings of fact and no unreasonable application of federal law. The summary of the circumstantial evidence of a crime against Stacy is accurate. The claim was evaluated under the correct legal standards. See Lodged Doc. 16 at 1-2 (reciting standards for ineffective assistance of counsel).

The underlying corpus delicti issue is question of state law.[10] The state habeas court's conclusion regarding the legal merits of the corpus delicti issue is therefore not reviewable here. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (federal habeas court is bound by state court's interpretation of state law). Because it is thus established that the alleged trial error would not have supported reversal, there can have been no unreasonable performance by appellate counsel in failing to raise it, and no prejudice from the omission in any case. See Strickland, 446 U.S. at 692, 694; Smith, 528 U.S. at 285-286.

### II. Claim Two: Ineffective Assistance of Appellate Counsel in Failing to Challenge Unduly Prejudicial Evidence

#### A. Petitioner's Allegations and Pertinent State Court Record

Petitioner contends that his appellate lawyer provided ineffective assistance by failing to challenge on appeal the admission into evidence of the letter that petitioner wrote to Krystal Doe

---

[10] The corpus delicti rule is a state law rule governing the admission and consideration of evidence, not a constitutional rule of criminal procedure. The erroneous admission of evidence violates due process only when it results in the denial of a fundamentally fair trial. Estelle v. McGuire, 502 U.S. 62, 72 (1991). The fundamental constitutional principle implicated by the corpus delicti rule is the due process requirement that each essential element of a crime be proved beyond a reasonable doubt. United States v. Winship, 397 U.S. 358, 364 (1970). Petitioner has neither presented nor exhausted a due process claim of insufficient evidence, or a claim that admission of his out-of-court statements violated due process.

shortly after her 18th birthday. The factual basis for the claim is stated as follows:

> Trial counsel objected to the submission of a letter […] that Petitioner allegedly wrote to Krystal Doe, his stepdaughter. Krystal was 18 years old at the time Petitioner gave her the letter. In essence, the letter states that Petitioner was willing to engage in sexual relations with her. The letter was used to bolster the claims that he molested his other two stepdaughters. However, there was nothing illegal about the letter. It was highly prejudicial and probative of nothing. The trial court conducted an Evidence Code section 352 balancing test, concluding that its probative value substantially outweighed any unfair prejudice. Appellate counsel never raised this issue on direct appeal. This is ineffective assistance of counsel.

As summarized above in the statement of the evidence at trial, the letter at issue expressed petitioner's beliefs that Krystal was sexually attracted to him and needed the sexual attention of a man, and petitioner's explicit offer to have sex with her. The full text of the letter, as read to the jury by the prosecutor in her opening statement, can be found in the Reporter's Augmented Transcript on Appeal, Lodged Doc. 8, at 2-5.

The record reflects that the trial judge ruled the letter admissible, over defense objection, as probative of petitioner's "disposition"[11] and of the complainants' credibility. I RT 157-158.

### B. The Clearly Established Federal Law

A criminal defendant enjoys the right to effective assistance of counsel on appeal. Evitts, 469 U.S. at 391. Claims that this right has been violated are evaluated under the familiar Strickland framework. Smith, 528 U.S. at 285. To demonstrate prejudice in the appellate context, petitioner must show a reasonable probability that he would have prevailed on appeal absent counsel's alleged errors. Id. at 285-86.

### C. The State Court's Ruling

The superior court's reasoned decision on state habeas review provides the basis for this court's review under § 2254(d). See Bonner, 425 F.3d at 1148 n.13. That court ruled as follows:

> *Appellate counsel failed to argue that it was an abuse of the trial court's discretion to admit into evidence Petitioner's July 9, 2010 letter.*

////

---

[11] See Cal. Evid. Code § 1108.

> Trial counsel objected to the admittance of Petitioner's July 9, 2010 letter at trial and the trial court allowed the letter to be admitted and explained:
>
>> "It shows that the girls – it would demonstrate that they didn't fabricate this or make it up. The defendant has evidenced that kind of conduct in writing. . . [s]o I'd be admitting that. […] It's highly probative. It's somewhat prejudicial, but it's extremely probative in the case because it's a seminal letter in the case, and it does go to show intent and a disposition. And, again, it explains the complaints of the alleged victims here."
>
> The decision to admit the letter falls within the trial court's discretion, and an appellate court will not disturb a trial court's evidentiary ruling unless the prejudicial effect of the letter clearly outweighs its probative value. See People v. Navarette (2003) 30 Cal.4th 458, 495; People v. Harris (2005) 37 Cal.4th 310, 331-21. Given the deferential review afforded evidentiary rulings and the explanation provided by the trial court for admitting the letter, appellate counsel's decision not to argue an abuse of discretion by the trial court in admitting the letter can be considered sound strategy.

Lodged Doc. 16 at 2-3.

### D. Objective Reasonableness Under § 2254(d)

The state court's ruling involved no unreasonable findings of fact and no unreasonable application of federal law. The factual summary is accurate, and the claim was evaluated under the correct legal standards. See id. at 1-2 (reciting standards for ineffective assistance of counsel).

The merits of the evidentiary issue are governed by state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991).[12] The state habeas court's conclusion as to the strength of the putative appellate issue is therefore unreviewable here. See Bradshaw, 546 U.S. at 76. In any event, the

---

[12] The erroneous admission of evidence violates the federal guarantee of due process only when it results in the denial of a fundamentally fair trial. Estelle, 502 U.S. at 72. The Supreme Court has rejected the argument that due process necessarily requires the exclusion of prejudicial evidence. Spencer v. Texas, 385 U.S. 554, 563-564 (1967); see also Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (noting that no Supreme Court precedent holds that unfairly prejudicial evidence offends due process). Freestanding claims for federal habeas relief based on the admission of propensity evidence must fail under AEDPA, because the Supreme Court has never held that propensity evidence violates due process. Mejia v. Garcia, 534 F.3d 1036 (9th Cir. 2008) (rejecting habeas claim that admission of sexual propensity evidence under Cal. Evid. Code § 1108 violates due process). Petitioner presents no freestanding due process claim based on admission of the letter to Krystal.

14

undersigned concurs that appellate counsel cannot be faulted for failing to pursue this issue, in light of the deferential standard of review that would have applied. The letter to Krystal was doubtlessly prejudicial, but it was also highly probative given California's express permission of propensity evidence in sex offense cases. Cal. Evid. Code § 1108. Accordingly, there is nothing unreasonable about the state habeas court's conclusion that appellate counsel did not perform below the standard required by the Sixth Amendment. The undersigned notes further that the record does not support a finding of prejudice from counsel's omission, for the same reasons. There is no reasonable likelihood that this claim would have succeeded on appeal.

### III. Claim Three: Actual Innocence of Charges Involving Stacy Doe

#### A. Petitioner's Allegations and Pertinent State Court Record

Petitioner contends that he is "factually innocent" of molesting Stacy. ECF No. 1 at 8. The petition alleges as follows:

> Petitioner did not molest Stacy Doe. There is no evidence of this at trial, other than conjecture and speculation by Stacy's two sisters and her mother. In fact, Stacy submitted a statement, post-trial, to Petitioner's Private Investigator, Greg Frost, stating that he never did anything of a sexual or illicit nature towards her.

Id.

Attached to the petition as Exhibit 3 is the Declaration of Gregory Frost, the investigator who interviewed Stacy over the telephone in 2015. ECF No. 1 at 40-52. Frost provides a detailed account of a conversation in which Stacy insisted that petitioner had never molested her, and that her mother had pressured her into making false accusations. Frost also recounts his extensive and unsuccessful attempts to obtain Stacy's signature on a declaration. Id.

Exhibit 4 is the Declaration of Bruce Zucker, petitioner's state post-conviction lawyer. ECF No. 1 at 54-56. Zucker states that Stacy confirmed petitioner's innocence and her willingness to sign a declaration in a conversation with him, and that he also made several unsuccessful attempts to obtain her signature during the course of state habeas litigation. Id.

The court's independent review of the trial court record has identified the following additional information pertinent to the claim. Stacy first recanted her allegations prior to petitioner's trial, and this fact was known to the parties and discussed with the court in the context

of her avoidance of process and failure to contact the prosecutor. See e.g., I RT 155-156, 164. Defense counsel had apparently been in contact with Stacy before the trial. Id.

Although Stacy did not testify at the trial, she did appear at petitioner's sentencing hearing and read a letter to the court denying that she had been molested. She said that her mother had pressured her into making false accusations. IV RT at 1052-1058.

### B. The Clearly Established Federal Law

There is no "clearly established federal law" that recognizes a substantive constitutional right not to be criminally convicted if innocent. See Herrera v. Collins, 506 U.S. 390, 404 (1993); Dist. Attorney's Office v. Osborne, 557 U.S. 52, 71-72 (2009) (recognizing that the Supreme Court has not decided the issue). In procedural contexts where "actual innocence" may be relevant to federal habeas proceedings, the standard is high: a petitioner must present reliable new evidence, in light of which no reasonable jury would have convicted him. See Schlup v. Delo, 513 U.S. 298 (1995) (actual innocence as exception to procedural default), McQuiggin v. Perkins, 569 U.S. 383 (2013) (actual innocence as basis for equitable tolling of statute of limitations).

### C. The State Court's Ruling

The superior court's reasoned decision on state habeas review provides the basis for this court's review under § 2254(d). See Bonner, 425 F.3d at 1148 n.13. The superior court ruled as follows:

> *Factual Innocence*
>
> Habeas corpus is not available to re-litigate factual determinations of fact made upon conflicting evidence after a fair trial. In re Dixon (1953) 41 C.2d 756, 760. Habeas corpus is not available to review the credibility of witnesses or to weigh the evidence supporting the judgment of conviction. In re La Due (1911) 161 C. 632, 635.
>
> Newly discovered evidence is not a cognizable habeas corpus claim unless the " 'new' evidence casts fundamental doubt on the accuracy and reliability of the proceedings. At the guilt phase, such evidence, if credited, must undermine the entire prosecution case and point unerringly to innocence or reduced culpability." Evidence is not sufficient if the evidence might have weakened the prosecutor's case or presented a mote difficult question for the judge or jury." In re Clark (1993) 5 C.4th 750, 766. [. . .]
>
> Petitioner submits the Declaration of Gregory Frost, a private investigator. See Exhibit 3 to the Petition. The declaration relates to

16

an interview Mr. Frost had with Stacy Doe. While Mr. Frost submits his statements under penalty of perjury; Stacy Doe's statements are not. The statements, therefore, are inadmissible hearsay. Moreover, Stacy's statements are not *new* evidence; at the sentencing phase of the trial, "Stacy testified that she concocted the allegations after being pressured by her mother. Stacy believed that her sister Elizabeth also fabricated her allegations under similar pressure from her mother." See Petition, page 7:11-13. Significantly, at trial, Dr. Anthony Urquiza gave expert testimony on Child Sexual Abuse Accommodation Syndrome (CSAAS) which manifests itself, among other ways, by the child retracting their previous allegations. See People v. James Harris, Court of Appeal Opinion, at p. 4. Finally, Petitioner admitted molesting Elizabeth and Stacy during his interview with the police. "He admitted caressing [Stacy]. His sexual contact with [Stacy] progress; he had intercourse with her three months before the interview. [Petition] slept with [Stacy] four to six nights a week and would perform any sex act on her he thought she would like." People v. James Harris, Court of Appeal Opinion, at p. 4.

For the reasons state above, the evidence submitted does not meet the threshold showing for "factual innocence."

Lodged Doc. 16 at 3.

### D. Federal Review is Barred by § 2254(d)

As noted above, the U.S. Supreme Court has never held that actual innocence provides a free-standing constitutional basis for relief from a non-capital conviction. See Herrera, 506 U.S. at 404; Dist. Attorney's Office v. Osborne, 557 U.S. at 71-72. Where there is no "clearly established law" within the meaning of § 2254(d), there can be no unreasonable application of federal law by the state court. See Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam). Accordingly, AEDPA bars relief on petitioner's innocence claim.[13]

### E. Petitioner Has Not Made a Prima Facie Showing of Actual Innocence

Even if this claim was not subject to AEPDA's limitation of relief and was not Teague-barred,[14] plaintiff's showing falls far short of what is required to demonstrate actual innocence in

---

[13] The state court reviewed petitioner's claim under California state law that provides under limited circumstances for habeas relief based on newly discovered evidence. That California law does not apply here. This court can only grant relief based on a violation of federal law, 28 U.S.C. § 2254(a), when such relief is not barred by § 2254(d).

[14] Even before passage of the AEDPA, Teague v. Lane, 489 U.S. 288 (1989), barred most habeas claims that rely on a principal of constitutional criminal procedure not previously announced by the U.S. Supreme Court.

1   other federal habeas contexts.  To demonstrate innocence, petitioner must begin by producing
2   "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness
3   accounts, or critical physical evidence – that was not presented at trial."  Schlup, 513 U.S. at 324.
4   The recantation evidence presented here does not satisfy this reliability standard.  The record
5   before this court, like the record before the state habeas court, contains no sworn testimony or
6   other sworn statement from Stacy.  Her recantation was known to defense counsel before trial, but
7   she did not testify for the defense.  Her statement at sentencing was not made under oath.  See IV
8   RT at 1052-1053.  The Frost and Zucker declarations are hearsay.  Moreover, both declarations
9   demonstrate that Stacy repeatedly failed to sign the declaration that had been drafted to
10  memorialize her statements for purposes of habeas proceedings.  Id.  Stacy and her husband even
11  provided false addresses to the investigator trying to secure that signature.  See ECF No. 1 at 52.[15]
12  For all these reasons, the recantation evidence cannot be considered reliable.

13       Even where a petitioner does present reliable new evidence, the reviewing court must
14  determine whether a reasonable jury could find petitioner guilty even if that evidence were
15  considered.  In conducting this inquiry, the habeas court considers all the evidence: old and new,
16  incriminating and exculpatory, admissible at trial or not.  House v. Bell, 547 U.S. 518, 538
17  (2006).  On this complete record, the court makes a "'probabilistic determination about what
18  reasonable, properly instructed jurors would do.'"  Id. (quoting Schlup, 513 U.S. at 330).  Here, a
19  reasonable jury aware that Stacy had recanted could nonetheless find petitioner guilty.

20       As noted by the state habeas court, a testifying expert explained that retraction of
21  allegations is common among children who have been sexually abused.  The testimony of
22  Tamara, Krystal and Elizabeth was sufficient to permit a jury to conclude that Stacy had been
23  molested even if she denied it.  Petitioner himself admitted having sexual contact with Stacy.  To
24  be sure, the trial record contains evidence of a family sufficiently dysfunctional that Stacy's later
25  report of manipulation by her mother is also plausible.  But the question is not whether a jury

---

[15] The investigator identifies Stacy's husband as "Gregg."  ECF No. 1 at 51-52.  If Stacy married petitioner's brother, with whom she left home prior to her 18th birthday (see supra n. 3), that would present further potential credibility issues regarding the recantation.

*could* have believed the recantation, but whether *no reasonable jury could have convicted petitioner* in light of the recantation. The answer to that question is a resounding "no."[16]

In short, petitioner has not demonstrated actual innocence. His innocence claim would therefore fail on the merits even without regard to § 2254(d), and even assuming that a freestanding innocence claim would be cognizable.

## CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d). Even without reference to AEDPA standards, petitioner has not established any violation of his constitutional rights. Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 19, 2020

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

---

[16] Indeed, it appears that during post-verdict interviews the jurors who convicted petitioner were informed that Stacy had recanted and asked whether this information would have changed their verdict. They said no. See IV RT 1068-1069.

19